UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 1:25CR00071-001 |
| PLAINTIFF | : | |
| | : | JUDGE DOUGLAS COLE |
| V. | : | |
| | : | <u>DEFENDANT'S SENTENCING</u> |
| MARTIN BAYHAN | : | <u>MEMORANDUM</u> |
| | : | |
| DEFENDANT | : | |

Now comes the Defendant, Martin Bayhan, by and through undersigned counsel, and hereby presents the following relevant information for this Honorable Court's consideration in determining a reasonable sentence to impose upon Defendant.  For the reasons set forth below, we respectfully submit that Defendant be considered for a deviation down from the sentencing Guidelines.

**I.      Procedural Background**

In addition to the facts listed in Pages 4 through 8, of the Presentence Investigation Report (PSR): Defendant knowingly possessed material containing child pornography. Defendant was charged with one count Information on July 29, 2025.  Defendant was subsequently arraigned and entered a guilty plea to Count 1 of the Information, Possession of Child Pornography, 18 U.S.C. 2252(A)(a)(5)(B) and (b)(2).

**II.     Sentencing Guidelines**

Pursuant the United States Sentencing Guidelines, Defendant falls under a criminal history of 0 and an offense level of 36 (-3 for acceptance of responsibility), totaling the offense level at 33.  This would typically result in an advisory sentencing guideline range of 135 months

to 168 months; However, Defendant's guidelines are reduced to the statutory maximum of 120 months in prison.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. Therefore, pursuant to *Booker*, the Sentencing Guidelines are advisory. The Guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. §3553 (a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The factors to be considered under 18 U.S.C. §3553 (a) include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need to deter the defendant and others, as well as the need to protect the public from the defendant's crimes, and the need to provide the defendant with the needed treatment in the most effective manner.

**A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

The first factor, which is a critical component of any practical sentencing rule is to consider the nature and circumstance(s) of the offense in addition to a defendant's history and characteristics.

Defendant is 58 years old with one prior misdemeanor conviction in the late 90's, early 2000. While this previous conviction is not used pursuant to the Guidelines, it is an offense that will be used by the Government and understandably will be concerning to this Honorable Court. Defendant wishes to explain that case, as well as the current case to the best of his ability.

Defendant was adopted at a very young age and grew up with an incredible support system of parents and siblings. Defendant received what he would describe as a great education;

2

However, he was subjected to severe bullying in grade school that carried into high school. At a young age, Defendant knew he was different from his peers in both his extracurricular activities of choosing music and singing as well as his sexuality. During his upbringing, especially being deeply rooted in the Catholic Faith, Defendant never felt comfortable enough to open up about his sexuality. Defendant tried everything in his power to suppress it.

Defendant's family was heavily involved in the Catholic Church and with Father Thomas McKenna. Defendant's sister (Holly) saw him struggling during his teenage years with what she suspected was just a sexuality crisis. It was not until later years that both she and their younger brother had suspicions of Defendant being sexually abused by McKenna. Presently, Holly states looking back, she suspects their father might have also suspected a problem with McKenna. Suddenly the priest was never invited to their home again and their family also switched to another church significantly further away from their house. Holly further stated Defendant denied any suspected abuse until a few years ago after McKenna passed away.

In his high school years, Defendant managed to work up the courage to confide in a few close friends about his sexuality. The advice he always received was to try and focus more on females, and that if he could play the part of a heterosexual male, eventually his thoughts and feelings would go away. Defendant tried that, even got married to a woman in 1992 in hopes that would "cure" him.

Immediately after graduating with a master's degree, Defendant was hired as the Band Director of his previous high school (Central Catholic). He was surrounded by former teachers who were still there and again regularly poked fun at him and the job he was doing. Defendant assimilated himself with fellow male band students who were also being bullied. He could tell these students were in the same position he was struggling with sexuality. Albeit Defendant was

3

married to a woman and the two now shared a child. In doing so, Defendant blurred the boundaries between teacher and student that ultimately crossed into inappropriate sexual relationships.

Defendant deeply regretted, and continues to regret, those decisions and the pain he caused those students, as well as his family and friends. Since the nature of that case was extremely difficult for everyone involved, it was decided in collaboration with all parties to plea No Contest to Misdemeanor charges. Defendant did not have to register as a sex offender, nor was he subject to any civil liability. Unfortunately, that did not prevent or lessen Defendant's desires for sexual activities involving minors. Defendant knew, however, that actually acting upon those desires would harm both himself and the other party. Defendant then turned to the world of child pornography, which he viewed as "indirect activity".

Defendant knows this activity is wrong and illegal. Defendant also knows this is not a victimless crime. Unfortunately, without properly addressing his past trauma and the urges and desires that came as a result of that, he would not have stopped had it been for the current case before this Honorable Court.

To this day, Defendant has not gone into details about the abuse with Holly or anyone else and is only starting to peel back the layers in therapy. While not a justification or an excuse to the nature and circumstances of Defendant's actions, Defendant merely hopes to provide insight into what led him down this path.

Research indicates a correlation between children who have been sexually abused are at a higher risk of perpetrating abuse later in life. Especially in Defendant's situation where he never worked to uncover his abuse and trauma, but rather, suppressed it as best as he could. Presently, Defendant attended an evaluation at Community Behavioral Health (CBH) three months ago and

has been attending treatment regularly. This includes specialized sex offender treatment. As the PSR indicates from CBH's notes, Defendant has demonstrated openness and shows a "strong passion for identifying solutions to the issues that led to his involvement in treatment".

Having given due consideration to a defendant's history and characteristics and the nature and circumstances of the offense, the Court must identify a sentence that reflects the seriousness of the offense, promotes respect for the law, provides a just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from further crimes of the defendant, though "a particular purpose may apply differently, or even not at all, depending on the kind of sentence under consideration." *Tapia v. United States*, U.S. 131 S. Ct. 2382, 2387-88 (2011). In other words, the Court is tasked with balancing the goals of sentencing and determining a fair and appropriate disposition.

### B. The Seriousness of the Offense, the Need to Deter Defendant and the Need to Protect the Public

The second factor requires a consideration of the general purposes of sentencing, which is the imposition of a sentence reflecting the seriousness of the offense, promoting respect for the law, and providing "just punishment" as well as specific deterrence. *United States v. Kimbrough*, 128 S. Ct. 570 (2007). While we appreciate the facial attraction of the general deterrence theory, we respectfully submit that whatever sentence is imposed here will have little impact on others engaging in criminal conduct. See Kittrie, et al., *Sentencing, Sanctions, and Corrections: Federal and State Law, Policy, and Practice*, 29 (2d ed. 2002). The weakness of general deterrence theory is underscored by its reliance on the flawed "underlying assumption that people weigh rationally the consequences of their behavior". Arthur W. Campbell, *Law of Sentencing* § 2:2 (2d ed. 1991).

The more imperative and relevant consideration in our case should be specific deterrence and its sister aim of reducing recidivism. It is widely recognized that shame and humiliation associated with an arrest and the uncovering of private behavior, distinguishes sex offenders from other categories of defendants. In other words, the mere uncovering of the conduct itself tends to result in lower recidivism rates:

> More than with any other class of offender, getting caught leaves sex offenders humiliated, shamed and shaken to the core. Being hand-cuffed and hauled away from decent society is a shattering experience for anyone, but it all the more electrifying and soul-stripping when the nature of the offense is as intimate and shameful a secret as is a sex crime. Eric Lotke, *Politics and Irrelevance: Community Notification Statutes*, 10 Fed. Sent. Rprtr. 64 (Sept./Oct. 1997).

Because Defendant will now have to register as a sex offender with all the conditions and requirements attached to registration, treatment and rehabilitation is what is necessary to reform his conduct, reduce the risk of relapse, and prevent any possibility of recidivism. To the extent that rehabilitation is to be achieved through the sanction imposed here, the law recognizes that imprisonment is not a proper vehicle to such an end. *Tapia*, 131 S. Ct. at 2390, ("…do not think about prison as a way to rehabilitate an offender.").

Through his guilty plea, Defendant demonstrated that he was willing to both admit and accept responsibility for his crime. We further submit that because of his willingness to be cooperative and follow the Court's strict rules with respect to release conditions, whatever treatment Defendant is to receive, it is better provided in the community than in prison.

**III.    Sentencing Conclusion and Attachments**

In analyzing the above-mentioned factors, the sentencing court should consider the possibility that a Guidelines Sentence is not just necessary to accomplish the goals set forth in §3553 (a), but that such a sentence would be "greater than necessary". Alternatively stated, a Guidelines sentence will actually thwart application of §3553(a)'s command to impose the

minimum sentence necessary to achieve the goals of sentencing. *Rita v. United States*, 127 S. Ct. at 577 (Scalia, J., concurring).

      Defendant's statutory maximum sentence is capped at 10 years; However, in light of Defendant's history and characteristics, the totality of circumstances surrounding his offense conduct, and the individualized considerations set forth above, as well as any other reasons that may be deemed appropriate and just, we respectfully request that the court impose a sentence that is sufficient but not greater than necessary to meet the ends of justice.

      Respectfully Submitted,

/s/ Chelsea J. Panzeca
*Attorney for Defendant*
Bleile & Dawson
810 Sycamore Street, 5th Floor
Cincinnati, Ohio 45202
(P) 513-564-0088
(F) 513-263-9089
chelseatheattorney@yahoo.com

Please see attached Exhibits:
A. Letter from Defendant
B. Letter from Defendant's sister
C. Letter from Defendant's daughter
D. Letter from Defendant's partner

## CERTIFICATE OF SERVICE

      I hereby certify that on January 20, 2026, I electronically filed the foregoing Sentencing Memorandum through the ECF system, which will send a notice of electronic filing to all parties of interest.

      /s/ Chelsea J. Panzeca